**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NEWMARK REALTY CAPITAL, INC. a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> BGC PARTNERS, INC., NEWMARK & COMPANY REAL ESTATE, INC. dba NEWMARK GRUBB KNIGHT FRANK, and DOES 1 to 10, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No. 5:16-cv-01702-BLF <br><br> [PROPOSED] **STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** <br><br> Before Hon. Susan van Keulen <br><br><br> Complaint Filed: April 4, 2016 <br> Trial Date: January 14, 2019 |

WHEREAS, the Court ordered that plaintiff Newmark Realty Capital, Inc. and defendants Newmark & Company Real Estate, Inc. and BGC Partners, Inc. (the "Parties") submit a proposed stipulated order governing the discovery of electronically stored information ("ESI") at the November 15, 2017 hearing and as codified in the Court's written order at Dkt. 133:

The Parties stipulate as follows:

### I. GENERALLY

1. <u>Modification</u>. This Order may be modified in the Court's discretion or by stipulation. The parties shall jointly submit any proposed modifications to the Court within 30 days after the Federal Rule of Civil Procedure 16 Conference. If the parties cannot agree regarding any such modification, the parties shall jointly submit their competing proposals and a summary of their

dispute to the Court.

2. <u>Cost-Shifting</u>. The parties shall bear their own ESI-related discovery costs, unless they agree otherwise or the Court orders otherwise. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

3. <u>Security</u>. The parties will also make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media. The parties recognize that sometimes productions will be served by secure FTP.

4. <u>No Waiver</u>. The mere production of ESI in this litigation as part of a mass production shall not itself constitute waiver for any purpose. Pursuant to Rule of Evidence 502(d), the inadvertent production of an attorney-client privileged or work-product protected ESI is not a waiver in the pending case or in any other litigation, including any foreign-, state-, or federal-court proceeding.

5. <u>Data Not Reasonably Accessible</u>. Absent a showing of good cause, voicemails, mobile phones, and tablets are deemed not reasonably accessible and need not be searched or collected from in response to a discovery request.

6. <u>Confidentiality Designation</u>. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file to the extent possible. If the filename of the native file does not identify the confidentiality designation, the producing party, at the time of production, shall disclose to the requesting party whether the native file contains confidential information under the Protective Order.

7. <u>Production</u>. Documents may be produced by FTP, external hard drive(s), readily accessible computer(s), or other electronic media ("Production Media"). The production shall include identifying information, including (1) the producing party's name; (2) the production date;

1    (3) the Bates number range of the materials contained in the production; and (4) whether the
2    production contains confidential information under the Protective Order in this case.  All documents
3    produced to plaintiff by FTP shall be delivered to Newmark-SM-Team@sheppardmullin.com and
4    Fang Wong at fwong@sheppardmullin.com; documents produced to plaintiff by other media shall
5    be delivered to the office of Sheppard Mullin Richter & Hampton LLP, c/o Mary Tom-Hum, 4
6    Embarcadero Center, 17th Floor, San Francisco, CA 94111.  All documents produced to defendants
7    by FTP shall be delivered to Newmark@kilpatricktownsend.com and Louis Ferrari at
8    lferrari@kilpatricktownsend.com; documents produced to plaintiff by other media shall be
9    delivered to the office of Kilpatrick Townsend & Stockton LLP, c/o Victoria Hopper, 2
10   Embarcadero Center, Suite 1900, San Francisco, CA 94111.

11           8.      Technology Assisted Review.  Nothing in this Order prevents the parties from
12   agreeing to use technology assisted review and other techniques insofar as their use improves the
13   efficacy of discovery.

14           9.      The form of production required by this Order shall not by itself, absent further
15   agreement by the parties, require any party to re-produce materials that were previously produced in
16   this litigation.

17           10.     Keyword Searching.  To the extent that keyword searching will be used to identify
18   the potentially responsive documents to be collected for review, the parties shall make reasonable
19   efforts to employ a search methodology that opens compound and nested files and de-compresses
20   archived files.  The parties shall also make reasonable efforts to employ search utilities that support
21   the use of stemmed searches (e.g. using ! or * to include variations on a keyword), wildcard
22   searches, Boolean searches, [highlighted portion is proposed by plaintiff; objected to by
23   defendants] and proximity searching.  The parties agree to meet and confer about further methods
24   to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI
25   that is not subject to discovery.

26           11.     Culling/Filtering.  To the extent that keyword or other methodologies are used to
27   identify the universe of potentially responsive documents to be collected for review, each party will
28   use reasonable efforts to filter out common system files and application executable files by using a

commercially reasonable hash identification process.

16. De-Duplication. A party is required to produce only a single copy of a responsive document, and a party shall make reasonable efforts to de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across Custodians (i.e., "global deduplication"). For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near- duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

## II. PRODUCTION OF HARD COPY DOCUMENTS

13. This section applies only to documents in hard copy format that have been scanned for the purposes of production.

14. <u>TIFFs</u>. Documents scanned into hard copy format shall be scanned and produced as single page Group IV TIFFs, with at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The parties will accommodate reasonable requests for production of specific images in color.

15. <u>Unitizing of Documents</u>. In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

16. <u>Metadata Fields</u>. The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CONFIDENTIALITY, and (f) CUSTODIAN.

17. <u>Database Load Files/Cross-Reference Files</u>. Productions shall include, in addition to

single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file (.opt or .lfp) that can be loaded into commercially acceptable production software (e.g., Relativity). Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

18. <u>Bates Numbering</u>. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

### III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION

19. <u>Metadata Fields and Processing</u>. Absent a showing of good cause, ESI produced in response to a request under Federal Rule of Civil Procedure 34 and/or in compliance with a mandatory disclosure requirement of this Court shall not include metadata, with the exception of the following to the extent available: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, TO, FROM, CC, BCC, SUBJECT, DATE SENT (MM/DD/YYYY), TIME SENT (PST), DATE RECEIVED (MM/DD/YYYY), TIME RECEIVED (PST), LAST MODIFIED DATE (MM/DD/YYYY), DATE CREATED (MM/DD/YYYY), FILE NAME, FILE EXTENSION, TITLE, AUTHOR, REDACTED, CONFIDENTIALITY, HASH, TEXT LINK, NATIVELINK, and VOLUME, which should be populated by the party or the party's vendor. Fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct; however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process. To the extent that the term "native" is used in this agreement, it means either in native or otherwise comparable format. Thus, for example, if a Google slide presentation is produced in native format, producing the document as a .ppt file would be appropriate.

20. <u>TIFFs</u>. The parties agree to produce documents pursuant to ESI production requests

in TIFF file format. Unless excepted below, TIFFs should be provided with at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

21. Database Load Files/Cross-Reference Files. Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Relativity). Each TIFF in a production should be referenced in the corresponding image load file (.opt or .lfp). The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the database load file.

22. Bates Numbering. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

23. Presentations. The parties shall take reasonable efforts to process presentations (MS PowerPoint, Google Presently) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image.

24. Spreadsheets. The parties shall take reasonable efforts to product spreadsheets in native format with a TIFF placeholder identifying that the document has been produced in native format. Native copies of spreadsheets shall be produced with a link in the NativeLink field, along with applicable metadata fields set forth above. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. The TIFF placeholder should

also indicate the Bates number and confidentiality level assigned to the native document.

25. <u>Proprietary Files</u>. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

26. <u>Request(s) for Additional Native Files</u>. If good cause exists to request production of certain files, other than those specifically set forth above, in native format, any party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with applicable metadata fields set forth above, where reasonably possible. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. The TIFF placeholder should also indicate the Bates number and confidentiality level assigned to the native document.

27. <u>Redaction of Information</u>. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

### IV. PROCESSING OF THIRD-PARTY DOCUMENTS

28. <u>Subpoena</u>. A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the parties to the litigation have requested that third parties make reasonable efforts to produce documents in accordance with the specifications set forth herein. However, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

29. <u>Production Not Bates-Stamped</u>. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

### V. SOURCES

30. <u>Sources to be Searched for Responsive Documents</u>. The parties agree to search central repositories or relevant portions thereof to the extent that either party reasonably anticipates

such locations may contain non-duplicative Responsive Documents. The parties agree to meet and confer to limit the scope of production from central repositories if the search of central repositories (or relevant portions thereof) that the producing party anticipates contain Responsive Documents is unduly burdensome or is likely to be unreasonably inefficient in identifying relevant documents.

31. <u>Limit on Email Production</u>. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure of this Court, shall not include email or other forms of electronic correspondence (collectively "email"). Any production requests for "documents" or "all documents," for example, generally do not encompass email. To obtain email parties must make specific email requests pursuant to Section VII below.

## VI. EMAIL PRODUCTION

32. <u>Production Requests</u>. Email production requests shall identify the custodian(s), search term(s), and date range(s) for the emails sought. The parties shall cooperate to identify the proper custodians, search terms, and date ranges for email production requests.

33. <u>Custodians</u>. Each requesting party shall limit its email production requests to a total of **fifteen** custodians per side for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians per side, upon showing a distinct need based on the size, complexity, and issues of this specific case.

34. <u>Search Terms</u>. Each requesting party shall limit its email production requests to a total of **fifteen** search terms per custodian per side. The parties may jointly agree to modify the foregoing limit on search terms without the Court's leave. The Court shall consider contested requests for additional or fewer search terms, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the

search, and thus each word or phrase shall count as a separate search term unless they are reasonable variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party request email production with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph after entry of this Order, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

35. <u>Limit on Number of Searches</u>. Upon agreement of search term(s), custodian(s), and date range(s), a party shall only be required to run an email search once in this litigation, absent further agreement between the parties or an order of the Court. However, if a party contends that the results of this one email search are overbroad, such party may elect to confer with the other parties to narrow the search to a subset of those results. Any contention that email search results are overbroad should be accompanied by a report showing hit results for each search term and custodian, as well as one or more examples of emails or documents that demonstrates the overbreadth of the search.

36. <u>Privilege Filter</u>. If a party uses a "privilege filter" to presumptively filter out purportedly privileged documents, such party must disclose the terms of the privilege filter to the other parties.

37. <u>Archived Emails</u>. If emails of a custodian falling within the date range(s) agreed to by the parties have been archived or are not readily accessible, and the producing party intends not to search such emails, the producing party shall make reasonable efforts to promptly disclose this to the requesting party.

38. <u>Email Attachments</u>. Attachments to emails, in addition to the emails themselves, shall be searched for the search term(s) agreed to by the parties.

**IT IS SO STIPULATED**, through Counsel of Record.

/ / /

/ / /

/ / /

| | | |
|---|---|---|
| DATED: December 1, 2017 | Respectfully submitted, | |
| | KILPATRICK TOWNSEND & STOCKTON LLP | |
| | By: */s/Gregory S. Gilchrist*<br>Gregory S. Gilchrist | |
| | Attorneys for Defendants/Counterclaimants<br>BGC Partners, Inc., and Newmark & Company Real Estate, Inc., dba Newmark Grubb Knight Frank | |
| DATED: December 1, 2017 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | |
| | By: */s/Laura L. Chapman*<br>Laura L. Chapman | |
| | Attorneys for Plaintiff/Counterdefendant<br>Newmark Realty Capital, Inc. | |

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: December 13, 2017

*[signature: Susan van Keulen]*

U.S. MAGISTRATE JUDGE SUSAN VAN KEULEN

70378785V.1