UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWMARK REALTY CAPITAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BGC PARTNERS, INC., et al.,<br><br>Defendants. | Case No.16-cv-01702-BLF (SVK)<br><br>**ORDER ON STATEMENT RE PLAINTIFF'S RESPONSES TO REVISED SECOND SET OF REQUESTS FOR ADMISSIONS**<br><br>Dkt. No. 353 |

Before the Court is the statement submitted by Defendants regarding Plaintiff's responses to Defendants' Second Set of Requests for Admission, as revised pursuant to the Court's order dated May 7, 2018 (ECF 343), as well as a declaration submitted by Plaintiff regarding this dispute. ECF 353, 355. The Court ORDERS as follows:

| Request for Admission | Plaintiff's Response | Defendants' Position | Proposed Compromises | Order |
|---|---|---|---|---|
| 167: Admit that NRC did not purchase any Google AdWords before 2014. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Defendant does not believe Plaintiff has conducted a "reasonable and diligent" investigation. Google AdWords are purchased through Google. Plaintiff has access to its Google AdWords history, would show all keywords Plaintiff has ever bid on, including the first time it bid on them. Plaintiff need only review its own AdWords history to | *Plaintiff's position:* Plaintiff does not believe a compromise is appropriate. Plaintiff's principals are not aware of ever purchasing AdWords. They hired a third party for various marketing purposes. | Response is adequate. |

| | | | | |
|---|---|---|---|---|
| | | determine whether it purchased keywords before 2014. Plaintiff has not produced its complete Google AdWords data (in spite of Defendants' discovery requests and Plaintiff's promise to do so); a proper answer to this RFA is important to establish the fact that Plaintiff did not purchase AdWords prior to 2014. | | |
| 169: Admit that N&CO.'s attorney wrote to NRC's attorney at Sheppard, Mullin, Richter & Hampton LLP in July 17, 2001, stating that "Newmark has used the trademark NEWMARK in connection with real estate brokerage for almost 50 years, and has offered certain financial services, including financing (e.g. private placements) and mortgage brokerage, in the real estate field since at least as early as 1988." | Plaintiff denies that the letter states the single comment quoted in the Request. It states much more, including that Defendant wanted to enter into a coexistence agreement whereby Defendant would agree not to use or register NEWMARK with mortgage banking or loan servicing, and Plaintiff would refrain from using or registering NEWMARK with real estate brokerage, real estate management, construction and telecommunication services. | Plaintiff's response is written as a complete denial, but it is really a qualified admission. Plaintiff should indicate, unless it has a basis to deny as much, that N&CO's attorney wrote a letter stating the quoted language, and it may qualify that admission by saying the letter included additional statements. But an outright denial is not appropriate here. | *Plaintiff's position:* Plaintiff does not believe a compromise is appropriate because Plaintiff used the exact same language from defendants' RFA responses, which defendants have aggressively defended. Defendants responses, served Dec. 1, 2017, regarding the exact same letter read: "[Defendant] denies that the letter 'states' the single comment quoted in the Request. It states much more, | Response is an admission as to authentication and receipt of the document only.

As such, the parties may each use the letter as evidence of factual bases for their respective arguments. |

2

| | | | | |
|---|---|---|---|---|
| | | | including that …" | |
| 170: Admit that following receipt of the July 17, 2001 letter from N&CO.'s attorney (referenced in RFA No. __ above), NRC did not conduct any investigation to determine whether N&CO. was, in fact, offering "certain financial services, including financing . . . and mortgage brokerage." | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Plaintiff did not conduct a "reasonable or diligent" investigation. Either it has record of an investigation, or it does not. Its principal, Michael Heagerty, was Plaintiff's point person for the correspondence between the parties. It is not credible for him to claim not to know whether he conducted any investigation into N & Co.'s services. Based on his deposition testimony, Defendants are unaware of any other principal that would have conducted an investigation. This is relevant because a reasonable investigation would have revealed that N & Co. was offering financing services, including mortgage brokerage services. Plaintiff must admit or deny this RFA. | *Plaintiff's position:* Plaintiff does not believe a compromise is appropriate. Mr. Heagerty does not recall conducting "any investigation to determine whether N&CO. was, in fact, offering certain financial services, including financing . . . and mortgage brokerage" "following receipt of the July 17, 2001 letter," which was over 17 years ago. The Court previously recognized that it was reasonable for Plaintiff not to recall events that allegedly occurred many years ago, and in this case, nearly two decades ago. | Response is adequate. |
| 172: Admit that, as of October 22, 2001 (when NRC's counsel at Sheppard, Mullin, Richter & Hampton LLP responded to a September 21, 2001 letter from N&CO.'s | Denied. | Plaintiff produced the letter in discovery, and it includes the quoted language. Plaintiff has no basis to deny this RFA. If the Court denies Defendants' request for Plaintiff to | | Response is adequate. Nothing in the Court's orders restricts the parties' rights under Fed. R. Civ. P. 36, 37 should, in the |

3

| | | | | |
|---|---|---|---|---|
| counsel), NRC stated that N&CO. could use NEWMARK for mortgage brokerage services in the "Eastern half of the United States." | | supplement this response, Defendants request the Court do so without prejudice to Defendants' ability to seek fees pursuant to Fed. R. Civ. P. 36 and 37 when Defendants establish that the RFA was improperly denied.<br><br>Defendants intended to include the letter as an attachment to this chart, but at 10:35 a.m. refused to allow Defendants to jointly file the chart if the letter was attached. Defendants seek leave of the Court to provide the attachments. | | future, a response be demonstrated to be improper. |
| 173: Admit that, from September 21, 2001 (the date of the letter NRC's counsel received from N&CO.'s counsel) to the end of 2002, NRC did not conduct any investigation to determine whether N&CO. was, in fact, offering mortgage brokerage services. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | See discussion of RFA No. 170, applicable here. | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Mr. Heagerty does not recall conducting "any investigation to determine whether N&CO. was, in fact, offering mortgage brokerage services" from September 21, 2001 to the end of 2002," which was approximately 16-17 years ago. The Court previously recognized that it was reasonable for | Response is adequate. |

4

| | | | | |
|---|---|---|---|---|
| | | | Plaintiff not to recall events that allegedly occurred many years ago, and in this case, nearly two decades ago. | |
| 174: Admit that N&CO.'s attorney wrote to Michelle Kahn of Sheppard, Mullin, Richter & Hampton LLP on January 31, 2006, and attached a co-existence agreement that included the following language: "NCRE [Newmark & Co. Real Estate, Inc.] is a commercial real estate services company, providing, inter alia, the following services" and listed, in part, "investment sales and financial services, namely, debt and equity financing, merchant banking, and financial analysis and consulting services." | Denied. | Defendants provide the Court with a copy of the referenced January 31, 2006 letter and co-existence agreement attachment. The co-existence agreement includes the quoted language. Plaintiff has no basis to deny this RFA. If the Court denies Defendants' request for Plaintiff to supplement this response, Defendants request the Court do so without prejudice to Defendants' ability to seek fees pursuant to Fed. R. Civ. P. 36 and 37 when Defendants establish that the RFA was improperly denied.<br><br>Defendants intended to include the letter as an attachment to this chart, but at 10:35 a.m. refused to allow Defendants to jointly file the chart if the letter was attached. Defendants seek leave of the Court to provide the attachments. | Plaintiff claims it denied the RFA because it included an extra "and" in the quoted language. Plaintiff agrees to supplement its response to admit the RFA if Defendant agrees to serve a revised RFA. Defendant does not believe serving a new RFA is necessary and Plaintiff should be able to supplement its response immediately.<br><br>*Plaintiff's position*: Defendants misquoted the subject co-existence agreement and Plaintiff has no obligation to admit a misquote. Plaintiff offered to supplement its response if defendants would amend the RFA to correct the misquote. Defendants refused. | Defendant is to provide a corrected RFA by 5:00 p.m. today, May 11, 2018, and Plaintiff is to respond with an unqualified admission by noon on May 14, 2018.<br><br>The Court does not expect to see this form of dispute from the parties' respective meet and confer leaders. If this level of lack of cooperation continues, the Court will sanction both parties. |

5

| | | | | |
|---|---|---|---|---|
| 175: Admit that following receipt of the January 31, 2006 letter and attachment from N&CO.'s counsel and through the end of 2006, NRC did not conduct any investigation to determine whether N&CO. was, in fact, offering "investment sales and financial services, namely, debt and equity financing services." | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | See discussion of RFA No. 170, applicable here. | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Mr. Heagerty does not recall conducting "any investigation to determine whether N&CO. was, in fact, offering 'investment sales and financial services, namely, debt and equity financing services'" "following receipt of the January 31, 2006 letter and attachment from N&CO.'s counsel and through the end of 2006," which was over a decade ago. The Court previously recognized that it was reasonable for Plaintiff not to recall events that allegedly occurred many years ago, and in this case, over a decade ago. | Response is adequate. |
| 176: Admit that after the U.S. Patent and Trademark Office issued a federal trademark registration to N&CO. on May 20, 2008 for the mark NEWMARK KNIGHT | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to | See discussion of RFA No. 170, applicable here. | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Mr. Heagerty does not recall conducting "any investigation to determine | Response is adequate. |

6

| | | | | |
|---|---|---|---|---|
| FRANK, which covered in part "investment sales and financial services, namely, debt and equity financing," NRC did not conduct any investigation to determine whether N&CO. was, in fact, offering "debt and equity financing." | enable it to admit or deny this request. | | whether N&CO. was, in fact, offering 'debt and equity financing.'" "after the U.S. Patent and Trademark Office issued a federal trademark registration to N&CO. on May 20, 2008," which was over a decade ago. The Court previously recognized that it was reasonable for Plaintiff not to recall events that allegedly occurred many years ago, and in this case, over a decade ago. | |
| 177: Admit that, in 1991, one or more of NRC's founders were aware of the New America Network. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Defendants question whether and how Plaintiff conducted a reasonable and diligent investigation. As Defendants understand it, Plaintiff was founded by three individuals. Plaintiff should ask those individuals whether they were aware of the New America Network (of which Defendant Newmark & Co. was a member). | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Plaintiff interviewed two of its founders (the third is no longer with the company), and neither of them could recall their awareness from twenty seven years ago. The Court previously recognized that it was reasonable for Plaintiff not to recall events that allegedly occurred many years ago, and in this case, nearly three decades | Response is adequate. |

7

| | | | | |
|---|---|---|---|---|
| | | | | ago. |
| 180: Admit that, in March 2012, NRC's Eric Von Berg and Tom Dao received a financing proposal from N&CO.'s Ben Bullock related to Menlo Equities. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Defendants question whether and how Plaintiff conducted a reasonable and diligent investigation. In this instance, Defendants provided the financial proposal to Plaintiff and the Court. *See* Dkt. 239, Ex. 15. Plaintiff is well aware of this document, has easy access to it, and it is unclear how its investigation does not allow it to admit or deny the request. Defendants should not have to depose Mr. Dao and Mr. Von Berg to confirm that they received the financing proposal, when their appear on the email chain. The RFA will limit the need to dispute this inarguable issue. Plaintiff must admit or deny the RFA. | *Plaintiff's position*: Plaintiff offered to supplement its response to deny this request. Neither Mr. Dao nor Mr. Von Berg thought of Mr. Bullock as being "N&Co.'s." Rather, they believed Mr. Bullock was employed by Cornish & Carey. | Defendant may re-serve the RFA without reference to "N&Co's" and Plaintiff will respond with an unqualified admission. Alternatively, Defendant may accept an unqualified denial from Plaintiff to the RFA as written. Defendant will inform Plaintiff of its selection by 5:00 p.m. today, May 11, 2018, and Plaintiff will serve its supplemental response by noon on May 14, 2018. |
| 181: Admit that N&CO.'s Ben Bullock's representation of Menlo Equities is an example of N&CO. providing mortgage banking services. | Plaintiff is unable to determine the meaning of "mortgage banking services" as used by Defendants in this request and Plaintiff has insufficient information to admit or deny this request. | RFA 181 is a follow-on to RFA 180, which identifies the Menlo Equities engagement. Plaintiff should interpret "mortgage banking services" under its commonly-understood meaning and respond to the | *Defendants' proposal*: For the purposes of this request, and to avoid any dispute, Plaintiff should interpret "mortgage banking services" as it uses the term on its website, which is that mortgage banking is the | Defendant is not obligated to make any change to this RFA. Plaintiff to serve its supplemental response by noon on May 14, 2018. |
United States District Court
Northern District of California

8

| | | | | |
|---|---|---|---|---|
| | | RFA based on that understanding, which seems to be what it did in response to RFA No. 183. | arranging for funding for for commercial properties and property portfolios. If Plaintiff objects to this definition of "mortgage banking," then Defendants ask that it admit or deny the RFA using the above language in place of "mortgage banking services."<br><br>Plaintiff agrees to supplement its response to this RFA, though cannot confirm when it will do so.<br><br>*Plaintiff's position*: Plaintiff agrees to supplement its response based on the definition defendants proposed for the first time this morning. | |
| 182: Admit that NRC showed to ING the financing proposal NRC received from N&CO. regarding Menlo Equities. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Defendants question whether and how Plaintiff conducted a reasonable and diligent investigation. Either Tom Dao or Eric Von Berg would have emailed indicating whether the above-described proposal was shown or sent to ING (a financial institution). | *Plaintiff's proposal:* Plaintiff does not believe a compromise is appropriate. Plaintiff conducted a reasonable investigation, including interviewing both Tom Dao and Eric Von Berg and neither of them recall whether they | Response is adequate. |

9

| | | | | |
|---|---|---|---|---|
| | | | ever "showed to ING the financing proposal NRC received from N&Co, regarding Menlo Equities." | |
| 183: Admit that NRC was aware in 2011 that Cornish & Carey Commercial offered mortgage banking services. | Plaintiff is unable to determine the meaning of "mortgage banking services" as used by Defendants in this request and Plaintiff has insufficient information to admit or deny this request. | Plaintiff must admit or deny this RFA without basing the denial on an objection to the meaning of a particular term, especially given the proposed compromise. | *Defendants' proposal*: For the purposes of this request, and to avoid any dispute, Plaintiff should interpret "mortgage banking services" as it uses the term on its website, which is that mortgage banking is the arranging for funding for for commercial properties and property portfolios. If Plaintiff objects to this definition of "mortgage banking," then Defendants ask that it admit or deny the RFA using the above language in place of "mortgage banking services."<br><br>Plaintiff agrees to supplement its response to this RFA, though cannot confirm when it will do so.<br><br>*Plaintiff's position*: Plaintiff agrees to supplement its | Plaintiff to serve its supplemental response by noon on May 14, 2018. |

| | | | | |
|---|---|---|---|---|
| | | | response based on the definition defendants proposed for the first time this morning. | |
| 185: Admit that NRC received a digital copy of Real Estate Alert's July 20, 2011 issue, which reported that Newmark Knight Frank was the "top brokerage" of office property sales in San Jose/Silicon Valley in the first half of 2011. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | It does not appear that Plaintiff conducted a reasonable and diligent search. Defendant produced a copy of the article in question to Plaintiff. Plaintiff knows who at its firm receives a subscription to the Real Estate Alert publication, and should inquire whether those within Plaintiff who received the Real Estate Alert publication received this particular edition. | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Plaintiff conducted a reasonable and diligent investigation, including interviewing 10 principals, none of which remembered ever receiving or reading the subject article seven years ago, or any time since then. | Response is adequate. |
| 186: Admit that, in 2009, Jamie Dick of Newmark Realty Capital worked in the same building as James Sladack of Newmark Knight Frank. | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | Plaintiff did not conduct a reasonable and diligent search. As with several of the other RFAs, Defendants produced in discovery (see NCRE00194895-96, attached) an email chain in which the sender notes that Messers. Dick and Sladack "work in the same building." Plaintiff is in a position to know whether both worked in the same building, especially since Mr. Dick noted he would "stop by and say hi." Defendants | *Plaintiff's position*: Plaintiff does not believe that a compromise is appropriate. Jamie Dick is no longer employed by Plaintiff. As the Court previously recognized, Plaintiff is unable to admit a fact that is within the knowledge of a third party. | Plaintiff is to either admit or deny. Plaintiff is to serve its supplemental response by noon on May 14, 2018. |

11

| | | | | |
|---|---|---|---|---|
| | | intended to include the letter as an attachment to this chart, but at 10:35 a.m. refused to allow Defendants to jointly file the chart if the letter was attached. Defendants seek leave of the Court to provide the attachments. | | |
| 187: Admit that, in 2009, James Sladack of Newmark Knight Frank sent an email copying Jamie Dick of Newmark Realty Capital in which he stated that he was "with the real Newmark" and that Jamie Dick was "with a different company that's appropriated our company name." | Plaintiff has conducted a reasonable and diligent investigation and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request. | See RFA No. 186.<br><br>Unless Plaintiff denies receiving the email chain in discovery, it did not conduct a reasonable search.<br><br>Plaintiff must admit or deny this RFA. | *Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. This document, which defendants raised for the first time this morning, was produced by defendants, not Plaintiff. As Jamie Dick is no longer with Plaintiff, Plaintiff is unable to admit or deny this request. | Plaintiff is to admit the authenticity and receipt of the document.<br><br>In the unlikely event that Plaintiff disputes the authenticity, it may submit factual support for its position to the Court. Note, that the fact that the email was created by Defendant is not, by itself, adequate grounds to question authenticity in this instance.<br><br>Plaintiff's supplemental response or submission to the Court is to be served by noon on May 14, 2018. |

12

| | | | | |
|---|---|---|---|---|
| **Genuineness Requests For Admission** | | | | |
| 190: Admit that NRC's Mark Ritchie attached a copy of Exhibit 1, titled "Newmark Realty Capital Research Summary," to his May 17, 2013 email to Looking Design, copying NRC's Michael Heagerty. | This Request is improper because it is not "asking Plaintiff to admit or deny the genuineness of any complete document (not portions of documents)," pursuant to the Court's Order (Dkt. 343 at 1), and must be withdrawn. Further, Defendants failed to attach as an exhibit the referenced May 17, 2013 email which was allegedly sent approximately five years ago, and Plaintiff is unable to admit or deny this request. | Defendants wish to avoid any later dispute that the email from Mr. Ritchie to the branding firm "Looking Glass," copying Mr. Heagerty, and attaching Exhibit 1 is a genuine email sent by Mr. Ritchie. | *Defendants' proposal*: Defendants have provided the email to Plaintiff. Plaintiff has no basis to refuse to respond to the RFA. Defendants intended to include the letter as an attachment to this chart, but at 10:35 a.m. refused to allow Defendants to jointly file the chart if the letter was attached. Defendants seek leave of the Court to provide the attachments.<br><br>*Plaintiff's position*: Plaintiff does not believe a compromise is appropriate. Where defendants RFAs requested an admission as to the genuineness of a document, Plaintiff duly responded and authenticated such document. (*See, e.g.*, Resp to RFA Nos. 189, 191-193.) This request was defendants' improper attempt to circumvent the Court's | Improper request. |

13

| | | | | |
|---|---|---|---|---|
| | | | limitation on RFAs. Defendants provided the subject document for the first time this morning. | |
| 194: Admit that Exhibit 5 attached hereto is a true and correct copy of a document entitled "Real Estate Financial Intermediaries" that was prepared by Mark Ritchie of NRC. | Denied. The original document in Exhibit 5 that was prepared by Mark Ritchie is entitled "RECos," which stands for "Real Estate Companies," and it includes a list of real estate financial intermediaries as well as national real estate services companies not in finance, such as Newmark Grubb Knight Frank. | Exhibit 5, referenced in the RFA, is attached for the Court's review. It is entitled "Real Estate Financial Intermediaries" It is unclear why Plaintiff is renaming it or denying the request. Plaintiff should admit that this is a document prepared by Mark Ritchie of NRC (Plaintiff) and if it wishes to qualify it by, for example, saying that the "file name" is different from the title in the document itself, it may do so. Defendants also ask the Court to strike Plaintiff's superfluous argument that the document describes "national real estate services companies not in finance, such as Newmark Grubb Knight Frank" as that has nothing to do with the RFA. If the Court denies Defendants' request for Plaintiff to supplement this | *Defendants' proposal*: If Plaintiff wants to admit that the document is a true and correct copy of a document prepared by Plaintiff's Mark Ritchie bearing the "heading" "Real Estate Financial Intermediaries" and its entitled "RECos," it may do so. *Plaintiff's position*: Defendants' compromise is not appropriate. It is not appropriate or acceptable for Defendants to re-write their request to force Plaintiff to make a statement that is not true. Defendants are trying to force an improper admission from Plaintiff in order to make an argument that Plaintiff considered "Newmark Grubb knight Frank" to be a financial intermediary, which is not true | Plaintiff to admit or deny that the document identified as Exhibit 5 was prepared by Mark Ritchie of NRC. The parties' respective positions regarding the title of the document and its contents or purpose are arguments for motions and/or trial. Plaintiff's supplemental response is to be served by noon on May 14, 2018. |

| | | response, Defendants request the Court do so without prejudice to Defendants' ability to seek fees pursuant to Fed. R. Civ. P. 36 and 37 when Defendants establish that the RFA was improperly denied. | and not an accurate inference to make from the document. | |
|---|---|---|---|---|

**SO ORDERED.**

Dated: May 11, 2018

SUSAN VAN KEULEN
United States Magistrate Judge