**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NEWMARK REALTY CAPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> BGC PARTNERS, INC., et al., <br><br> Defendants. | Case No. 16-cv-01702-BLF <br><br> **ORDER DENYING IN PART PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS ARE NOT IN CIVIL CONTEMPT OF COURT'S PRELIMINARY INJUNCTION ORDER; AND ORDER REGARDING PLAINTIFF'S MOTIONS TO SUBMIT NEW EVIDENCE** <br><br> [Re: ECF 145, 207, 222] |

Plaintiff Newmark Realty Capital, Inc. filed a Motion for Order to Show Cause Why Defendants Are Not in Civil Contempt of the Court's Preliminary Injunction Order ("Motion for Contempt"). Mot., ECF 145. Plaintiff claims that Defendants BGC Partners, Inc. and Newmark & Co. Real Estate, Inc. are in contempt for violating the Court's November 16, 2017 preliminary injunction order. Having considered the parties' briefing and oral argument, the Court hereby DENIES IN PART Plaintiff's Motion for Contempt. The Court, however, orders Defendants to correct technical violations of the preliminary injunction order. The Court will also allow Defendants to respond to Plaintiff's newly submitted evidence which they did not have an opportunity to respond.

## I.    BACKGROUND

Plaintiff and Defendants are companies that offer services in the commercial real estate market. Over the years these companies have both expanded geographically and Defendants have expanded substantially into the mortgage services sector occupied by Plaintiff. On April 4, 2016, Plaintiff filed this action against Defendants, alleging trademark infringement. Compl., ECF 1.

On November 16, 2017, the Court issued a preliminary injunction order that enjoined Defendants from using:

> NEWMARK alone or in combination with any other words as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, investment brokerage and investment consulting in the field of commercial real estate.

November 16, 2017 Order, ECF 134. That order went into effect on November 17, 2017 upon Plaintiff's posting of a bond. ECF 137. On November 30, 2017, Plaintiff filed the instant motion claiming that Defendants had failed to comply with the preliminary injunction order. Mot. The following day, on December 1, 2017, Defendants filed a Motion for Stay and Motion for Reconsideration of the Preliminary Injunction. ECF 148, 151.

The Court held a hearing on Defendants' Motion for Stay and Plaintiff's Motion for Contempt on December 14, 2017. Defendants' Motion for Stay was denied. ECF 173. The Court, however, recognized that the terms "investment brokerage" and "investment consulting" may be too vague to be enforceable. *Id.* Thus, the Court suspended the injunction as to "investment brokerage" and "investment consulting" services pending further consideration of the parties' efforts to jointly propose clear definitions of these terms. *Id.* As for Plaintiff's Motion for Contempt, the Court heard oral argument but set another hearing on January 4, 2018 due to the limited time for argument. The Court also allowed the parties to file supplemental briefing by January 2, 2018. During the January 4, 2018 hearing, the Court provided some guidance as to the boundaries of the preliminary injunction order in relation to Defendants' website. *See* January 4, 2018 Hearing Tr., ECF 183. The Court also asked the parties to meet and confer to facilitate Defendants' compliance based on the Court's guidance. Defendants agreed to provide a declaration regarding the status on correcting their sales brochures.

Thereafter, the Court granted in part and denied in part Defendants' Motion for Reconsideration of the Preliminary Injunction. March 30, 2018 Order, ECF 262. Determining that the November 16, 2017 Order contained several errors, the Court narrowed the preliminary injunction. *Id.* at 42–43. Accordingly, Defendants are currently enjoined from using:

> NEWMARK alone or in combination with any other words, but not

2

NEWMARK KNIGHT FRANK alone or in combination with other words, as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage brokers—in the field of commercial real estate.

*Id.* at 43.

Prior to the Court's ruling on Defendants' Motion for Reconsideration of the Preliminary Injunction, Plaintiff filed a Motion to Modify the Preliminary Injunction and requested the Court to expand the November 16, 2017 injunction. ECF 202. Considering the narrowed injunction issued on March 30, 2018, the Court denied Plaintiff's Motion to Modify the Preliminary Injunction. ECF 284. As such, the currently effective injunction is set forth in the Court's March 30, 2018 Order.

Both parties have appealed the Court's preliminary injunction order to the Ninth Circuit. ECF 319, 323. This Court retains jurisdiction to enforce the preliminary injunction while the appeal proceeds. *See Ashker v. Sayre*, No. 05-03759 CW, 2010 WL 1980233, at *3 (N.D. Cal. May 17, 2010).

## II.    LEGAL STANDARD

### A.    Civil Contempt

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citation omitted); *see also Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order."). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992)).

"The contempt need not be willful." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal quotation marks and citation omitted). Contempt sanctions, however, are not warranted where the nonmoving party's action "appears to be based on

3

a good faith and reasonable interpretation" of the court's order.  *Id.* (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir. 1982)).  Substantial compliance also is a defense to civil contempt—"[i]f a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt."  *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (citation omitted).

Accordingly, the party alleging civil contempt must demonstrate by clear and convincing evidence that (1) the nonmoving party violated a court order, (2) the noncompliance was more than technical or de minimis, and (3) the nonmoving party's conduct was not based on a good faith and reasonable interpretation of the violated order.  *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *8 (N.D. Cal. Aug. 8, 2017) (citing *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010)).

### B.  Request for Judicial Notice

The Court may generally consider matters properly subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In support of its motion, Plaintiff filed a Request for Judicial Notice ("RJN") of "Newmark Group, Inc.'s November 21, 2017 Amendment No. 1 to Form S-1 Registration Statement filed with the Securities and Exchange Commission."  RJN, ECF 146.

Plaintiff's RJN is GRANTED, as the document is a matter of public record and Defendants do not dispute the document's authenticity.  Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  While the document is accepted as what it represents, any specific fact findings and legal conclusions set forth in the document may not bind this Court.

## III.  EVIDENTIARY OBJECTIONS

### i.  Defendants' Objections to Plaintiff's Supplemental Brief and Accompanying Declarations

Defendants object to and request the Court to strike Plaintiff's Supplemental Brief ("Pl.'s Supplemental Brief, ECF 177), Second Supplemental Yip Declaration (ECF 177-1), and Dao

Declaration (ECF 177-5).  ECF 179.  Defendants contend that Plaintiff's Supplemental Brief is "overlong due to the use of copious, lengthy footnotes."  *Id.* at 1–2.  Defendants also argue that the Second Supplemental Yip Declaration inappropriately recites prior factual allegations in an attempt to flout page limits and contains evidence that "adds nothing to the contempt motion . . . but to which Defendants yet again ha[d] no opportunity to reply."  *Id.* at 2.  The Court does not find the content and length of Plaintiff's Supplemental Brief and the Second Supplemental Yip Declaration to be improper.  The Court therefore OVERRULES Defendants' objections and DENIES the request to strike Plaintiff's Supplemental Brief and the Second Supplemental Yip Declaration.

As for the Dao Declaration, Defendants assert that it contains hearsay.  ECF 179 at 2.  This declaration states that Tom Dao, an employee of Plaintiff, received an "email from a contact" that references a financing deal facilitated by "NKF Capital Markets."  Dao Decl., ECF 177-5; *see also* Exs. 1 and 2 to Dao Decl., ECF 177-6, -7.  The Court does not find that the Dao Declaration contains hearsay because Plaintiff offers the declaration for the proposition that confusion has "surfaced regarding NKF CAPITAL MARKETS" (Pl.'s Supplemental Brief 3) rather than for the truth of the matter asserted.  The Court therefore OVERRULES Defendants' objections and DENIES the request to strike the Dao Declaration.

### ii.    Plaintiff's Objections to the Supplemental Declaration of Alison Lewis

Plaintiff filed nine objections to the Supplemental Lewis Declaration (ECF 187-1) which was submitted as a status report regarding Defendants' sales brochures.  ECF 188.  Defendants filed a reply to Plaintiff's objections.  ECF 194.

First, Plaintiff objects to Ms. Lewis' statement that "[a]s someone who has worked in commercial real estate since 1999, I agree with Plaintiff's principal, Mr. Mitsanas, who testified that sales and financing services have been offered side-by-side for decades" as lacking foundation and mischaracterizing Mr. Mitsanas' testimony.  ECF 188 at 1.  This objection is OVERRULED because Ms. Lewis is making a statement based on her personal understanding of Mr. Mitsanas' statement rather than arguing the precise nature of his position.

Second, Plaintiff objects to Ms. Lewis' statement that "I cannot imagine that customers

would be confused about the use of the word 'Newmark' on sales brochures that pre-date the Court's order, since those brochures are fundamentally about selling property, something that Plaintiff does not do" as lacking foundation and speculative. *Id.* This objection is OVERRULED because Ms. Lewis is describing her belief based on her personal observations of the brochures and understanding of Plaintiff's business. To the extent that Ms. Lewis' "belief" is not relevant the Court will give this evidence the weight it deserves.

Plaintiff's third to eighth objections pertain to Ms. Lewis' statements regarding Defendants' production and distribution of sales brochures. *See* ECF 188 at 2–5. For example, Ms. Lewis explains that Defendants "rarely if ever use Microsoft Office" and instead "use[s] a more sophisticated design tool known as Adobe Creative Suite." Supplemental Lewis Decl. ¶ 9. Plaintiff objects to those statements as lacking foundation or irrelevant. The Court finds that the objected statements are relevant and do not lack foundation because Ms. Lewis, as Chief Administrative Officer for Newmark Knight Frank, has worked with her marketing staff on editing Defendants' sales brochures (*see* Supplemental Lewis Declaration ¶¶ 1–2). Plaintiff's third to eighth objections are therefore OVERRULED.

In addition, Plaintiff objects to Ms. Lewis' statement that "[Defendants'] brokers would much rather talk to . . . clients about how we can help them sell properties" as speculative, lacking foundation, and irrelevant. ECF 188 at 4–5; Supplemental Lewis Decl. ¶ 17. However, as provided in Ms. Lewis's Declaration in support of Defendants' opposition to the Motion for Contempt, she has had interactions with Defendants' brokers while executing Defendants' compliance plan. *See generally* Lewis Decl. in Supp. of Defs.' Opp'n, ECF 164-2. Thus, the Court does not find that Ms. Lewis' statement to be speculative or lacking foundation. Her statement is relevant because it is probative of Defendants' compliance with the injunction order. Supplemental Lewis Decl. ¶ 17. This objection is therefore OVERRULED.

## IV. PLAINTIFF'S MOTIONS TO SUBMIT NEW EVIDENCE

### A. Plaintiff's Motion to Submit New Evidence at ECF 207

On February 13, 2018, Plaintiff submitted a request to submit new evidence for (1) Plaintiff's Motion for Contempt and (2) Plaintiff's opposition to Defendants' motion for

reconsideration.[1]  ECF 207.  Defendants oppose the request.  ECF 216.

Regarding the Motion for Contempt, Plaintiff seeks to submit new evidence of Defendants'
(1) January 4, 2018 PTO declarations (ECF 203-1, -2, -3), (2) January 26, 2018 promotional email
(ECF 202-4), (3) the email, voicemail greeting, marketing materials of Michael Grausz
(Defendants' debt and equity financing professional) (ECF 202-7), (4) screenshots of their
websites (ECF 203-3) and recent press releases (ECF 202-8, -9), (5) recent public earnings
presentation and financial reports (Exs. 1 and 2 to Yip Decl., ECF 207-2, -3; ECF 202-8), (6)
website video of Defendants' IPO (ECF 202-9), (7) an email dated December 15, 2017 and
received by Jeff Wilcox, Plaintiff's principal (ECF 205), (8) a January 7, 2018 email from David
Woodward, the CEO of CompassRock Real Estate (ECF 185-1), and (9) a January 27, 2018 text
message from a potential client to George Mitsanas, Plaintiff's principal (ECF 199-8).  ECF 207.
The aforementioned evidence was not available at the time when Plaintiff filed its reply in support
of the Motion for Contempt on December 11, 2017.  Thus, Plaintiff could not have submitted the
evidence before briefing closed.  The Court therefore GRANTS Plaintiff's request to submit the
new evidence identified above for its Motion for Contempt.

**B.      Plaintiff's Motion to Submit New Evidence at ECF 222**

On February 20, 2018, Plaintiff filed a second request to submit new evidence for (1)
Plaintiff's Motion for Contempt, (2) Plaintiff's opposition to Defendants' motion for
reconsideration, (3) Plaintiff's motion to modify the preliminary injunction. ECF 222.  Defendants
oppose the request.  ECF 228.

Plaintiff seeks to submit declarations and accompanying exhibits at ECF 222-1 to 222-6
for all three motions.[2]  Specifically, Plaintiff seeks to submit new evidence of (1) a $18,201 check
that was mistakenly sent to Plaintiff instead to Defendants (ECF 222-4), (2) Defendants'
advertisement in "The Registry" (ECF 222-2), (3) Michael Heagerty's declaration recounting a

---

[1] The Court has previously ruled on Plaintiff's request as to its opposition to Defendants' motion
for reconsideration.  March 30, 2018 Order 9–10.
[2] The Court has previously ruled on Plaintiff's request as to its opposition to Defendants' motion
for reconsideration and motion to modify the preliminary injunction. March 30, 2018 Order 10–
11; ECF 284 at 5–6.

February 14, 2018 conversation during a MBA meeting (ECF 222-3), (4) the declaration of Andrew Mekjavich, a vice president who joined Plaintiff in February 2018, regarding his experience of confusion (ECF 222-5), and (5) Defendants' use of the NEWMARK logo during a cocktail reception at the Commercial Real Estate Finance/Multifamily Housing Convention & Expo (ECF 222-6). ECF 222.

Regarding the Motion for Contempt, the Court GRANTS Plaintiff's request to submit evidence filed at ECF 222-1 to 222-6 described above. Unlike Defendants' contention (ECF 228), the Court does not find that Plaintiff's request is untimely because the newly submitted evidence was not available when the briefing for Motion for Contempt was closed on December 11, 2017.

## V.  DISCUSSION

Plaintiff asserts that Defendants are in contempt of the Court's preliminary injunction order. As set forth in the Court's March 30, 2018 Order, Defendants are currently enjoined from using:

> NEWMARK alone or in combination with any other words, but not NEWMARK KNIGHT FRANK alone or in combination with other words, as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage brokers—in the field of commercial real estate.

March 30, 2018 Order 43. The Court addresses Plaintiff's arguments by categorizing the evidence which Plaintiff relies on to contend that Defendants are violating the preliminary injunction.

### A.  Defendants' Amended S-1 Form and IPO

Defendants filed an Amended S-1 Form Registration Statement with the Securities and Exchange Commission ("SEC") in advance of Newmark Group, Inc.'s IPO. Ex. 1 to RJN ("Amended S-1 Form"), ECF 146-1. The Amended S-1 Form refers to Newmark Group, Inc. as "Newmark" and states that "Newmark is a rapidly growing, high margin, full-service commercial real estate services business that offers a full suite of services and products . . . [that] include capital markets, which consists of investment sales, debt and structured finance." *Id.* at iii, 111. Plaintiff argues that the Amended S-1 Form shows that Defendants will continue to use trademarks containing NEWMARK to offer mortgage services because the S-1 Form refers to the

offering of "debt and equity financing" and a "full-service" commercial real estate platform. Mot. 3. In Plaintiff's view, the use of Newmark in the Amended S-1 Form is "actionable" because that form "was aimed to attract public attention of investors and others." Reply 4, ECF 166. In this regard, Plaintiff asserts that the use of the Amended S-1 Form to raise money for Defendants' IPO by promoting mortgage services is a violation of the injunction. Mot. 6–7; Reply 5. In addition, Plaintiff claims that Newmark Group, Inc. is being used as a trademark. Reply at 5.

Defendants counter that the Amended S-1 Form is a mandatory SEC filing related to the offering of securities to the investing public as opposed to selling mortgage services. Opp'n 3, ECF 164. According to Defendants, the Amended S-1 Form describes Newmark Group, Inc. as a public holding company and that it was formed for the purpose of spinning off Defendant BGC Partners, Inc.'s real estate business. *Id.* at 3–4. Defendants also argue that the name of the corporate parent (Newmark Group, Inc.) is not used as a trademark to denote the source of mortgage services. *Id.*

The Court finds that the Amended S-1 Form does not violate the preliminary injunction order. As Defendants point out, the Amended S-1 Form was filed with the SEC to promote the offering of "securities" to public investors as opposed to selling mortgage services. For the same reason, Defendants' IPO, which is a sale of "securities," does not violate the injunction order. Moreover, Plaintiff has not provided clear and convincing evidence that Newmark Group, Inc. is being used as a trademark. *Affordable Media*, 179 F.3d at 1239 (holding that the moving party must show a violation by clear and convincing evidence). As set forth in the Amended S-1Form, "Newmark Group, Inc." is used as the name of the corporate public holding company that has no direct operations. Amended S-1 Form 12. In fact, Defendants' various subsidiaries provide the actual commercial real estate services. *See id.* at 9, 12, 14, F-14. Therefore, the Court concludes that Plaintiff has failed to show that Defendants are in contempt of the injunction order based on the Amended S-1 Form and Newmark Group, Inc.'s IPO.

**B.    Cross-selling Mortgage Services**

Plaintiff argues that Defendants use NEWMARK trademarks to "cross-sell mortgage business to Berkeley Point, which is owned by or affiliated with [D]efendants" in violation of the

preliminary injunction. Mot. 4. As evidence, Plaintiff points to the Amended S-1 Form's statement that "Newmark's fast growing commercial *mortgage business is an opportunity for* strong loan originations and *cross-selling opportunities*" and that the "combination of Berkeley Point and ARA . . . will provide substantial *cross-selling* opportunities." *Id.* (citing Amended S-1 Form 4, 9) (emphasis in original).

In response, Defendants contend that the preliminary injunction order does not prohibit referrals to their mortgage businesses, including Berkeley Point. Opp'n 5. Defendants argue that under Plaintiff's interpretation of the injunction their sales brokers would have to send referrals "only to Defendants' competitors" but not their affiliates or colleagues and that this result is "preposterous on its face." *Id.*

Plaintiff further argues that the "Lanham Act is designed to prevent likelihood of *any type of* confusion, including as to the '*affiliation*, *connection*, or *association* of such person [infringing the trademark] with another person.'" Pl.'s Supplemental Br. 1 (citing 15 U.S.C. § 1125(a)(1)) (emphasis and alterations in original), ECF 177. On this basis, Plaintiff claims that "injunctions that enjoin violations of the Lanham Act must by definition prohibit conduct that causes affiliation, connection, or association confusion." *Id.* Under Plaintiff's view, it appears that Defendants would not be able to even disclose that their sales and leasing providers and mortgage service businesses are affiliates. *See* Mot. 7. On the other hand, Defendants argue that Plaintiff's interpretation of the injunction based on "affiliational confusion" "was never part of [the preliminary injunction motion] briefing, has no record support, and is inapplicable to this current case." Defs.' Supplemental Br. 1, ECF 178.

The Court is unpersuaded by Plaintiff's argument that the preliminary injunction order prohibits Defendants from cross-selling mortgage services to their affiliate businesses or disclosing any such affiliations. Plaintiff contends that the injunction must prevent affiliational confusion because § 1125(a)(1) of the Lanham Act provides so. However, while Plaintiff pled violation of § 1125 (forbidding false designation of origin) in its complaint, it never asserted violation of § 1125(a)(1) in the motion for preliminary injunction. *See* Mot. for Prelim. Inj., ECF 41. As such, Plaintiff did not address what referrals Defendants could make from their protected

NEWMARK services to their own, but differently named, mortgage service businesses such as Berkeley Point. The Court thus made no findings related to cross-selling mortgage services to Defendants' affiliates. Without making such findings, it was never the intention of the Court to require Defendants to forego business opportunities from existing customers by being precluded from referring business to their own affiliates. Nor did Plaintiff request such an injunction. In fact, during the hearing on the motion for preliminary injunction, Plaintiff argued that "if [Defendants] want to keep competing under Berkeley Point, that is, this is America and that's terrific." September 7, 2017 Hearing Tr. 21:24–22:1, ECF 110. The result that Defendants' sales and leasing brokers would have to refer their clients to Plaintiff or other competitors rather their own separately named mortgage businesses such as Berkeley Point was simply not contemplated by the parties and the Court. For these reasons, the preliminary injunction order does not prohibit Defendants from cross-selling mortgage services to their affiliate mortgage service businesses.

### C. Newmark Knight Frank Website

Plaintiff argues that Defendants' Newmark Knight Frank website continues to offer mortgage services in violation of the injunction. Mot. 4. For example, Plaintiff submits that the website provides that "Newmark Knight Frank's Hotels practice provides . . . *Equity and Debt Financing.*" *Id.* (citing Ex. 5 to Yip Decl., ECF 145-2) (emphasis in original). Plaintiff also contends that the Newmark Knight Frank "Company Overview" webpage's statement that "[w]e provide a *fully integrated* platform of services" does not comply with the Court's injunction order. *Id* at 3 (emphasis in original). The Court acknowledges that Plaintiff made this argument under the original preliminary injunction but the March 30, 2018 Order no longer enjoins Defendants from using NEWMARK KNIGHT FRANK as a trademark to denote the source of mortgage services. March 30, 2018 Order 43. Therefore, Plaintiff's request for contempt based on the statements in the Newmark Knight Frank website no longer has merit.

### D. Press Releases and Other Materials Promoting Mortgage Services

According to Plaintiff, Defendants "have continued to issue press releases and other promotional material that violate the injunction." Mot. 5. As an example, Plaintiff points to a November 21, 2017 press release that states that "Newmark Knight Frank (NKF) is pleased to

announce . . . . NKF's full-service platform [that offers] . . . services including . . . debt placement, valuation and advisory services; commercial mortgage brokerage services." Ex. 12 to Yip Decl., ECF 145-2. According to Plaintiff, the same statement appears in nearly 1,000 press releases going back to January 21, 2014. Mot. 6. Plaintiff also asserts that "[n]early 100 press releases accessible on ARA A Newmark Company's website, going back to June 22, 2015, also appear to contain *such statements*." *Id.* (emphasis added). Here, by referring to "such statements" regarding Newmark Knight Frank's services quoted above, Plaintiff takes issue that ARA A Newmark Company's website contains press releases that describe Newmark Knight Frank (or Newmark Grubb Knight Frank) as offering debt placement and commercial mortgage brokerage services. *See* Exs. 15–16 to Yip Decl., ECF 145-2; Yip Decl. ¶ 21, ECF 145-1 (pointing out that a number of sampled ARA A Newmark Company's press releases contain a "statement regarding Newmark Knight Frank's (or Newmark Grubb Knight Frank's) 'full-service platform [offering] a wide range of services including . . . debt placement, valuation and advisory services; commercial mortgage brokerage services'").[3] However, as previously discussed, the March 30, 2018 Order no longer enjoins Defendants from using NEWMARK KNIGHT FRANK as a trademark to denote the source of mortgage services. March 30, 2018 Order 43. Therefore, the Court finds no violation of the preliminary injunction based on Defendants' press release statements pointed out by Plaintiff.

Plaintiff also asserts that Defendants are violating the injunction because Newmark Knight Frank's homepage "links to a September 8, 2017 press release publicizing the firm's affiliation with Berkeley Point, saying 'Berkeley Point will dramatically increase the scale and scope of Newmark.'" Mot. 6 (citing Ex. 20 to Yip Decl., ECF 145-3). The press release's statement suggests that Defendants offer mortgage services under "Newmark" and thus violates the preliminary injunction order. However, Plaintiff has pointed to only one press release that states that "Berkeley Point will dramatically increase the scale and scope of Newmark" among numerous

---

[3] Plaintiff does not raise the issue whether the press releases' descriptions of ARA Newmark (as opposed to Newmark Knight Frank) violate the injunction order. Thus, the Court does not determine that issue. However, the use of "ARA Newmark" to denote the source of "mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage brokers" violates the injunction and thus any such description should be taken down.

press releases that Plaintiff has reviewed. Thus, at this juncture, the Court finds that this violation is de minimis. *See Facebook*, 2017 WL 3394754, at *8 (requiring a showing that the noncompliance was more than de minimis). Moreover, the publication date of this press release at issue is September 8, 2017 before the November 16, 2017 Order took effect. Thus, there was no violation when Defendants published this press release. As Plaintiff submitted the September 8, 2017 press release along with the instant motion about two weeks after the injunction order went into effect, Defendants may not have had reasonable time to review their past press releases. Under these circumstances, the Court does not find that the reference to "Newmark" in the September 8, 2017 press release supports a finding of contempt. Nevertheless, Defendants shall review their past press releases and modify or take down those articles that reference "Newmark" in a manner that fails to comply with the March 30, 2018 Order.

**E.    Defendants' Acquisition of Regency Capital Partners**

Defendants acquired a real estate finance firm called Regency Capital Partners in 2017. Amended S-1 Form 113. Plaintiff argues that Defendants are violating the injunction by making available the profiles of professionals from Regency Capital Partners at the Newmark Knight Frank website. Mot. 7. The Court rejects this argument because the March 30, 2018 Order no longer restricts Defendants' use of NEWMARK KNIGHT FRANK in relation to mortgage services.

**F.    Berkeley Point's Brochures**

Plaintiff argues that Berkeley Point uses "Newmark" to denote the source of mortgage services. Mot. 7. For support, Plaintiff points to Berkeley Point's General Brochure and homepage. For example, Berkeley Point's General Brochure shows a diagram regarding its "strong parent & affiliate relationships" that includes Newmark Grubb Knight Frank and ARA A Newmark Company:

//

//

//

//



Ex. 30 to Yip Decl., ECF 145-3.  But while this diagram indicates that Berkeley Point is affiliated with other subsidiaries of Cantor Fitzgerald, nowhere does the diagram show that Berkeley Point is using NEWMARK as a trademark to denote the source of mortgage services.

Plaintiff also points to Berkeley Point's homepage which contains hyperlinks titled "NKF Capital" which connect to Newmark Knight Frank's website. Exs. 31–32 to Yip Decl., ECF 145-3; Yip Decl. ¶¶ 33–34.  These links do not violate the injunction because Defendants are not enjoined from using "NKF Capital" or "Newmark Knight Frank" to denote the source of mortgage services.

### G.     Sales Brochures

Plaintiff asserts that Defendants' website advertises at least a "dozen glossy sales brochures" which display "a team of professionals, including those providing debt and equity services, branded prominently with NEWMARK trademarks."  Reply 4 (citing Exs. 1–13 to Mitsanas Decl. in Supp. of Reply, ECF 166-2).

The Court has reviewed the thirteen sales brochures submitted by Plaintiff.  Ten of those brochures display "Newmark Knight Frank" along with a list of debt and equity (or financing ) advisors.  Plaintiff contends that "any client looking the last page of [the] brochure will think that NEWMARK KNIGHT FRANK is the source of debt and equity financing services."  *See* Mitsanas Decl. in Supp. of Reply ¶¶ 3–4, ECF 166-1.  But the Court does not find those brochures

to be problematic because Defendants are not enjoined from using NEWMARK KNIGHT FRANK to denote the source of mortgage services.

Three other advertising brochures display "ARA A Newmark Company" along with a list of financing professionals. Exs. 4, 6, 11 to Mitsanas Decl. in Supp. of Reply. Plaintiff asserts that "any client looking at the last page of [the] brochure will think that [D]efendants' ARA A Newmark Company is the source of financing (i.e., mortgage services)." Mitsanas Decl. in Supp. of Reply ¶ 6. The Court finds that the "ARA A Newmark Company" brochures are in conflict with the preliminary injunction order. However, the submitted brochures provide no indication whether Defendants created and circulated those brochures after the November 16, 2017 Order took effect. Defendants represent that those brochures existed before the injunction issued. January 4, 2018 Hearing Tr. 38:19–39:17. In fact, Defendants have instructed their mortgage service brokers not to produce marketing materials that include the "Newmark" brand. Lewis Decl. in Supp. of Defs.' Opp'n ¶ 18. Thus, the Court finds that Defendants are in compliance with the preliminary injunction to the extent that Defendants have designed their sales brochures to omit "NEWMARK alone or in combination with any other words, but not NEWMARK KNIGHT FRANK alone or in combination with other words, as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage brokers—in the field of commercial real estate" as set forth in the March 30, 2018 Order. In other words, the brochures do not constitute clear and convincing evidence that supports a showing that Defendants have violated the injunction order by creating non-compliant brochures after the order took effect. *Affordable Media*, 179 F.3d at 1239 (requiring clear and convincing evidence that shows a violation of the court's order).

The remaining issue is that the "ARA A Newmark Company" brochures are available at Defendants' website. Mitsanas Decl. in Supp. of Reply ¶ 3. Insofar as the brochures exist on Defendants' website, that availability does not comply with the preliminary injunction order. However, at this juncture, such instances of non-compliance are technical violations that do not support a finding of civil contempt. *See Gen. Signal*, 787 F.2d at 1379. As stated in Ms. Lewis'

declaration, since the injunction took effect on November 17, 2017, Defendants have formed a compliance plan and instructed the affected brokers to not produce marketing materials that include the "Newmark" brand or use "pre-existing marketing if those materials include the Newmark brand." Lewis Decl. in Supp. of Defs.' Opp'n ¶ 18. There is no indication that Defendants' brokers have affirmatively used the ARA A Newmark Company brochures stored in their website after the injunction took effect. On this basis, the Court does not find Defendants to be in contempt.

Nevertheless, Defendants must further comply with the Court's preliminary injunction order. After the January 4, 2018 hearing, Defendants submitted Ms. Lewis' supplemental declaration that reports Defendants' cost of editing and replacing the sales brochures. Ms. Lewis reports that "there are currently 164 sales brochures online that are NEWMARK-branded in some way and include contact information for our debt and equity professionals." Supplemental Lewis Decl. ¶ 14. About "one-quarter of these brochures will have to be altered by an outside vendor, while the remainder can be handled in-house." *Id.* For those brochures that could be handled in-house, Ms. Lewis estimates that the editing would require 240 hours. *Id.* at 15. For those brochures that could be handled using outside firms, she estimates that the cost would be about $4,000. *Id.* These estimates, however, include sales brochures that use NEWMARK KNIGHT FRANK which may be the majority of the sales brochures that were at issue when Ms. Lewis submitted her supplemental declaration. Indeed, ten out of thirteen sales brochures submitted by Plaintiff contain the NEWMARK KNIGHT FRANK branding. *See* Exs. 1–13 to Mitsanas Decl. in Supp. of Reply. Because Defendants are no longer enjoined from using NEWMARK KNIGHT FRANK, the Court expects that the number of brochures at issue would be substantially less and thus revising those brochures does not appear to be overly burdensome.

Accordingly, the Court orders Defendants to modify sales brochures that use "NEWMARK alone or in combination with any other words, but not NEWMARK KNIGHT FRANK alone or in combination with other words, as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage

brokers—in the field of commercial real estate" to be in compliance with the injunction **within twenty-one (21) days of the date of this order.** Defendants may seek an extension but they must submit a declaration in support of their request.

### H.    Other Evidence Submitted After Briefing was Closed

#### i.    Evidence Attached to Plaintiff's Supplemental Brief

Plaintiff filed two articles containing photographs of Defendants' IPO which show their promotion of the new public company using "N Newmark." Exs. 1–2 to Second Suppl. Yip Decl., ECF 177-2, -3. Defendants respond that the photographs are only showing the IPO of Newmark Group, Inc., which used "Newmark" as shorthand for the securities filing. January 4 Hearing Tr. 28:23–29:4. Plaintiff also submitted Newmark Group, Inc.'s "Class A Common Stock" prospectus filed with the SEC. Ex. 3 to Second Suppl. Yip Decl., ECF 177-4. The Court is satisfied that the photographs depicting Defendants' IPO and the "Class A Common Stock" prospectus do not constitute clear and convincing evidence of a violation of the preliminary injunction order. As discussed above, Defendants' IPO offers "securities" to public investors as opposed to selling mortgage services.

The Court notes that one of the articles contains a description of defendants' new public company: "Newmark is a full-service commercial real estate services business that offers a complete suite of services and products . . . through brands including Newmark Knight Frank, Newmark Cornish & Carey . . . ." Ex. 1 to Second Suppl. Yip Decl. This article is an "About this Event" webpage at Nasdaq's website and announces that Newmark Group Inc. will celebrate is IPO. Thus, like the Amended S-1 Form, this article pertains to Defendants' IPO and sales of securities. Moreover, it is unclear whether Defendants or Nasdaq published this article. The Court therefore does not find that the Nasdaq article constitutes clear and convincing evidence that supports a finding of contempt.

In addition, Plaintiff filed a declaration of Tom Dao who states that he received an "email from a contact" that references a financing deal facilitated by "NKF Capital Markets." Dao Decl., ECF 177-5; *see also* Exs. 1 and 2 to Dao Decl, ECF 177-6, -7. This evidence does not support a showing of contempt because Defendants are not enjoined from using NKF Capital Markets to

17

offer mortgage services.

### ii. Evidence Attached to Plaintiff's Motion to Submit New Evidence at ECF 207

Plaintiff submitted new evidence of Defendants' (1) January 4, 2018 PTO declarations (ECF 203-1, -2, -3), (2) January 26, 2018 promotional email (ECF 199-9), (3) the email, voicemail greeting, marketing materials of Michael Grausz (Defendants' debt and equity financing professional) (ECF 202-7), (4) screenshots of their websites (ECF 203-3) and recent press releases (ECF 202-8), (5) recent public earnings presentation and financial reports (Exs. 1 and 2 to Yip Decl., ECF 207-2, -3; ECF 202-8), (6) website video of Defendants' IPO (ECF 202-9), (7) an email dated December 15, 2017 and received by Jeff Wilcox, Plaintiff's principal (ECF 205), (8) a January 7, 2018 email from David Woodward, the CEO of CompassRock Real Estate (ECF 185-1), and (9) a January 27, 2018 text message from a potential client to George Mitsanas, Plaintiff's principal (ECF 199-8). ECF 207. The Court addresses each evidence below.

First, the January 4, 2018 PTO declarations pertain to Defendants' NEWMARK KNIGHT FRANK trademark. ECF 203-1, -2, -3. This evidence can no longer serve as a basis for contempt because Defendants are not enjoined from using NEWMARK KNIGHT FRANK to offer mortgage services.

Second, the January 26, 2018 promotional email forwarded to Mr. Mitsanas by a client contains a link to a survey regarding interest rates. ECF 199-9. The link was provided by Raymond T. Cirz, a Senior Managing Director of Defendants, who uses a "Newmark Knight Frank" signature block. *Id.* The link connects to a survey page which is titled "NEWMARK FINANCING RATE SURVEY SPREAD OVER TREASURY RATE." ECF 202-6. Here, a person clicking on the link would know that the survey is provided by "Newmark Knight Frank" based on Mr. Cirz's position and email signature. The Court thus finds that the survey's use of NEWMARK in the title is only a technical violation that does not warrant a finding of contempt. *See Gen. Signal*, 787 F.2d at 1379; *see also Facebook*, 2017 WL 3394754, at *8. Nevertheless, Defendants shall correct the use of the word NEWMARK in their interest rate surveys.

Third, Defendants' debt and equity financing professional, Mr. Grausz, has an email signature that contains "NKF Capital." Ex. 2 to Slatt Decl., ECF 199-4. However, below his

email address, the signature also includes the phrase "Save a Tree - Think Before You Print. Sustainably Newmark Cornish & Carey." *Id.* His voicemail greeting states that he works for "Newmark Cornish & Carey." Slatt Decl. ¶ 10, ECF 202-7. Apparently, Mr. Grausz intended to present that he is now positioned at NKF Capital but by mistake did not omit "Newmark Cornish & Carey" from his email signature and voicemail greeting. This appears to be an inadvertent violation and thus is not sufficient to support a finding of civil contempt. *Gen. Signal Corp.*, 787 F.2d at 1379 (holding that inadvertent violations of an order do not constitute contempt). Nevertheless, Defendants shall ensure that their employees correct such issues which may still exist in their email signatures and voicemail greetings.

Fourth, Defendants' website and press releases that refer to "Newmark Knight Frank" in relation to mortgage services do not violate the injunction because Defendants are no longer enjoined from using NEWMARK KNIGHT FRANK to denote the source of such services.

The Court further discusses other aspects of the press releases. While some press releases provide that Newmark Group, Inc. operates NKF Capital Markets, they do not state that Newmark Group, Inc. itself provides mortgage services. *See, e.g.,* Ex. 4 to Yip Decl. at ECF 202-8, ECF 202-9. Rather, the press releases provide that NKF Capital Markets offer services for arranging financing. *Id.* For these reasons, the Court does not find that the press releases' mere reference to Newmark Group Inc. constitute clear and convincing evidence that Defendants are using NEWMARK to promote their mortgage service offerings in violation of the injunction.

However, one press release raises an issue. Plaintiff asserts that Defendants' February 5, 2018 press release contains statements that violate the injunction. ECF 207 at 6. This press release discusses BGC Partners, Inc. and Newmark Group, Inc.'s earnings. Ex. 8 to Yip Decl. at ECF 202-8, ECF 202-9. As Plaintiff points out, the press release abbreviates Newmark Group, Inc. as "Newmark" and states under the "About Newmark Group, Inc." heading:

> Newmark is a full-service commercial real estate services business that offers a complete suite of services . . . across the entire commercial real estate industry. Newmark's investor/owner services and products include capital markets . . . and, under other trademarks and names like Berkeley Point and NKF Capital Markets, government sponsored enterprise lending, loan servicing, debt and structured financing and loan sales.

*Id.* To be clear, Defendants may use trademarks and names like Berkeley Point and NKF Capital Markets to offer government sponsored enterprise lending, loan servicing, debt and structured financing and loan sales. However, in particular, the above statements that "Newmark is a full-service commercial real estate services business that offers a complete suite of services . . . across the entire commercial real estate industry" and "Newmark's investor/owner services and products include capital markets" suggest that Defendants provide mortgage services under the "Newmark" brand in violation of the March 30, 2018 Order. The Court recognizes that Plaintiff requested leave to submit this new evidence after briefing was closed. As such, Defendants did not have a meaningful opportunity to address the substance of those statements at issue. Accordingly, the Court will allow Defendants to submit a response **within seven (7) days of the date of this order.** Defendants may either argue why the press release is not a violation or inform the Court that it will be taken down.

Fifth, Defendants' public earnings presentation and financial reports submitted by Plaintiff contains information regarding Newmark Group, Inc.'s earnings and finances.[4] *See* Exs. 1–2 to Yip Decl. at ECF 207-1; ECF 202-8. These financial documents report the financial status of Defendants' public company for the purpose of informing investors as opposed to offering mortgage services. Thus, the Court finds that Plaintiff has not shown that those documents constitute clear and convincing evidence that supports a finding of contempt. *Affordable Media*, 179 F.3d at 1239.

Sixth, the video submitted by Plaintiff is a recording of Newmark Group, Inc.'s IPO. This evidence does not support a showing that Defendants violated the injunction order. As discussed, Defendants' IPO offers "securities" to public investors as opposed to selling mortgage services.

Seventh, a principal of Plaintiff, Jeff Wilcox, received an email from a client asking whether Plaintiff went public. Wilcox Decl. ¶ 3, ECF 205. Similarly, Mr. Mitsanas received a text message from a potential client asking whether Plaintiff went public. Mitsanas Decl. at ECF 202-4 ¶¶ 2–3; ECF 199-8. The email and text message relate to Defendants' IPO and has no

---

[4] One report consolidates Defendant BGC Partners, Inc. and Newmark Group, Inc.'s financial results. Ex. 2 to Yip Decl. at ECF 207-1.

bearing on whether Defendants offered mortgage services under "Newmark." Thus, the evidence does not show that Defendants have violated the injunction.

Eighth, the January 7, 2018 email from David Woodward, the CEO of CompassRock Real Estate, inquires whether NKF could refer any "receivership and/or property management assignments." ECF 185-1. This evidence does not show that Defendants uses NEWMARK to offer mortgage services. Thus, it does not support the contention that Defendants have violated the Court's preliminary injunction order.

### iii. Evidence Attached to Plaintiff's Motion to Submit New Evidence at ECF 222

Plaintiff submitted new evidence of (1) a $18,201 check that was sent to Plaintiff instead to Defendants (ECF 222-4), (2) Defendants' advertisement in "The Registry" (ECF 222-2), (3) Michael Heagerty's declaration recounting a February 14, 2018 conversation during a MBA meeting (ECF 222-3), (4) the declaration of Andrew Mekjavich, a vice president who joined Plaintiff in February 2018, regarding his experience of confusion (ECF 222-5), and (5) Defendants' use of the NEWMARK logo during a cocktail reception at the Commercial Real Estate Finance/Multifamily Housing Convention & Expo (ECF 222-6). ECF 222. The Court discusses each evidence below.

First, the $18,201 check was mistakenly sent to Plaintiff instead to Defendants. *See* ECF 222-4. But it is unclear whether the purpose of the $18,201 payment was to compensate for Defendants' mortgage services or sales and leasing services. For this reason, the relevance of this check as to the issue of contempt is unclear. Thus, this check does not constitute clear and convincing evidence that supports a finding of contempt. *Affordable Media*, 179 F.3d at 1239.

Second, Newmark Knight Frank advertised an internet banner alongside an article about Plaintiff's mortgage services in "The Registry". ECF 222 (showing a screenshot of the article and advertisement). This evidence cannot serve as a basis for finding contempt because Defendants are no longer enjoined from using NEWMARK KNIGHT FRANK to denote the source of mortgage services.

Third, Mr. Heagerty's declaration recounts his February 14, 2018 conversation during the MBA meeting. Heagerty Decl. ¶¶ 4–7, ECF 222-3. During that meeting, Mr. Heagerty was asked

about "what it was like for [Plaintiff] when it was spun off of NKF through NKF's recent IPO." *Id.* ¶ 6. Mr. Mekjavich, Plaintiff's vice president, similarly testifies that he repeatedly explained that he was not from Newmark Knight Frank during the MBA meeting. Mekjavich Decl. ¶ 4, ECF 222-5. These experiences do not show that Defendants offered mortgage services using NEWMARK in violation of the preliminary injunction. Thus, the above statements of Mr. Heagerty and Mr. Mekjavich do not support a finding that Defendants are in contempt of the Court's order.

Finally, during the Commercial Real Estate Finance/Multifamily Housing Convention & Expo that was held in February 2018, Defendants' affiliate Cantor Commercial Real Estate ("CCRE") hosted a cocktail reception. Mekjavich Decl. ¶ 5. CCRE sent an invitation to the cocktail reception which included a "Newmark" logo at the bottom left corner:



*Id.*; Ex. 1 to Mekjavich Decl., ECF 222-6. Mr. Mekjavich also testifies that CCRE had a large screen that projected rotating images, including the word "Newmark" that "looked the same as what was on the invitation I received." Mekjavich Decl. ¶ 5. Plaintiff contends that Defendants violated the preliminary injunction order by using "Newmark" during a commercial real estate mortgage event. ECF 222 at 4–5. The Court is concerned that Defendants' use of "Newmark" during this cocktail reception may constitute a violation of the preliminary injunction order that

warrants a finding of contempt.  The Court also recognizes that Plaintiff requested leave to submit this new evidence after briefing was closed and thus Defendants did not have a meaningful opportunity to address the substance of this evidence.  Accordingly, the Court will allow Defendants to submit a response **within seven (7) days of the date of this order.**

## VI.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDRED that:

(1) Plaintiff's Motion for Order to Show Cause Why Defendants Are Not in Civil Contempt of the Court's Preliminary Injunction Order is DENIED IN PART.

(2) Defendants shall modify or remove their (i) press releases and (ii) sales brochures that use "NEWMARK alone or in combination with any other words, but not NEWMARK KNIGHT FRANK alone or in combination with other words, as a trademark to denote the source of the following services—mortgage banking, mortgage brokerage, loan servicing, and investment services which are subordinate to or derivative of mortgage services provided by mortgage brokers—in the field of commercial real estate" to be in compliance with the preliminary injunction **within twenty-one (21) days of the date of this order.**  Defendants may seek an extension but they must submit a declaration in support of their request.

(3) Defendants shall correct the use of NEWMARK in their interest rate surveys.

(4) Defendants shall ensure that their employees' email signatures and voicemail greetings are in compliance with the March 30, 2018 Order.

(5) Defendants shall file a compliance report outlining the above corrections **within thirty (30) days of the date of this order.**

(6) Defendants may submit a three (3) page response addressing the issues of (i) Defendants' description that "Newmark is a full-service commercial real estate services business that offers a complete suite of services . . . across the entire commercial real estate industry. Newmark's investor/owner services and products include capital markets . . . " in their press release(s) and (ii) Defendants' display of "Newmark" in their invitation and during the cocktail reception at the Commercial Real Estate Finance/Multifamily Housing Convention & Expo that

was held in February 2018 **within seven (7) days of the date of this order.** The Court will not accept a response from Plaintiff.

(7) Plaintiff's request for attorneys' fees and costs in bringing this motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 29, 2018

_____
BETH LABSON FREEMAN
United States District Judge