**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NEWMARK REALTY CAPITAL, INC., <br> Plaintiff, <br> v. <br> BGC PARTNERS, INC., et al., <br> Defendants. | Case No. 16-cv-01702-BLF <br><br> **ORDER RE MOTIONS IN LIMINE** <br> [Re: ECF 635, 640, 641, 642, 643, 644, 645] |

In preparation for trial which is set to begin on January 11, 2019, the parties submitted 11 motions in limine. The Court held a final pretrial conference ("pretrial conference") on November 29, 2018. With respect to each side's motions in limine ("MIL's"), the Court rules as follows, for the reasons below and as stated on the record at the pretrial conference:

## PLAINTIFF'S MOTIONS IN LIMINE (ECF 635)

**(1) Plaintiff's Motion in Limine No. 1 to Exclude Evidence and Reference to the September 11 Terrorist Attacks**

Plaintiff moves to preclude Defendants "from presenting any evidence or making any reference to the September 11, 2001 terrorist attacks," including articles produced by Defendants pertaining to the "rebuilding of investment bank Cantor Fitzgerald after the Sept. 11, 2001" attacks, under Federal Rules of Evidence ("FRE") 402 and 403. *See* Plaintiff's MIL's at 2, ECF 634-4. Defendants counter that the evidence is relevant and proper under FRE 403. *See* Defendants' Opp'n at 2, ECF 660. As discussed on the record at the pretrial conference, Plaintiff's MIL No. 1 is **GRANTED IN PART** and **DENIED IN PART** and **DEFERRED IN PART**.

The Court has considered this evidence under FRE 401 and 403. First, the Court is not

persuaded that Cantor Fitzgerald's devasting loss or its remarkable recovery efforts are relevant to any issue in this trademark case. At best, Defendants make the attenuated argument that the evidence supports its laches defense regarding notice because Cantor Fitzgerald was so prominently featured in the news reports in the aftermath of 9/11 and it purchased Newmark & Co. in 2011, which also garnered press coverage, that also referenced the 9/11 attacks, Plaintiff must have seen the press and learned that Defendants intended to use "Newmark" for real estate financial services. At best, this is slightly probative of the notice issue. However, calling on the jury's sympathy and compassion related to 9/11 is likely to be inflammatory, hence significantly prejudicial.

Having balanced the interests set forth in FRE 403, the Court will not allow wholesale reference to 9/11 through documents or testimony. The Court will allow limited evidence that mentions 9/11 only incidentally. Defendants' articles that make only a passing reference to the September 11 attacks are not excluded. Thus, Plaintiff's MIL No. 1 is DENIED IN PART with respect to such articles only.

All other references to the September 11 attacks in Defendants' presentation of evidence, including live testimony, are excluded. Thus, Plaintiff's MIL No. 1 is GRANTED IN PART with respect to all other references to the September 11 attacks in Defendants' presentation of evidence.

To the extent Defendants call rebuttal witnesses to rehabilitate their character if Defendants' character is attacked by Plaintiff, the Court defers ruling on whether reference to the September 11 attacks in rebuttal testimony will be permitted. Thus, Plaintiff's MIL No. 1 is DEFERRED IN PART with respect to Defendants' rebuttal evidence, if any, in the event Defendants' character is attacked.

**(2)    Plaintiff's Motion in Limine No. 2 to Exclude Evidence and Arguments regarding "Full-Service"**

Plaintiff moves to exclude "Defendants' arguments and evidence regarding 'full-service,' 'fully integrated,' 'complete range of services,' and similar language," arguing that Plaintiff has not brought infringement claims on "full-service." *See* Plaintiff's MIL's at 3–4. Defendants counter that this evidence is relevant to several of Defendant's defenses and fundamental to understanding aspects of Defendants' business. *See* Defendants' Opp'n at 5. The Court finds Defendants' arguments

persuasive. Defendants are entitled to introduce evidence about the nature of Newmark & Co.'s business over the years. Whether "full-service" is a generally understood term in the industry is for the parties to prove or disprove and for the jury to determine. As discussed on the record at the pretrial conference, the Court finds Plaintiff's arguments unavailing, and Plaintiff's MIL No. 2 is **DENIED**.

**(3)** **Plaintiff's Motion in Limine No. 3 to Exclude the Testimony of Nirav Shah**

Plaintiff moves to exclude the testimony of Defendants' trial counsel Nirav Shah on grounds that Mr. Shah "has no personal knowledge of 'loss of data and records' during the relevant time period," and that Mr. Shah "will act as an aggregator of hearsay," among other arguments. *See* Plaintiff's MIL's at 8–13. Defendants contest all points stating that Shah's testimony is crucial to proof of evidentiary prejudice in their laches defense and additionally state that "Mr. Shah will *only* be testifying before the Court and not the jury." *See* Defendants' Opp'n at 10–13 (emphasis in original). The Court is not persuaded by Plaintiff's speculation that Mr. Shah will not testify truthfully or would be biased. Cross examination and rebuttal evidence may be offered as needed to expose bias.

Thus, and as discussed on the record at the pretrial conference, Plaintiff's MIL No. 3 for total exclusion of Mr. Shah is **DENIED** on the condition that Mr. Shah will not testify before the jury, as Defendants have represented, which ameliorates a number of concerns. The Court acknowledges Plaintiff's argument with respect to hearsay; however, exclusion based on potential hearsay is premature. Mr. Shah's testimony will be limited to matters within his own personal knowledge. Evidentiary objections to Mr. Shah's testimony, should it be given, may be raised during trial.

Plaintiff has additionally argued that it was unaware that Mr. Shah would be a witness and it has not had the opportunity to depose him. The Court agrees and orders that Plaintiff is entitled to a two-hour deposition before trial.

**(4)** **Plaintiff's Motion in Limine No. 4 to Exclude Certain Arguments regarding Definitions**

Plaintiff moves to "prohibit Defendants from making arguments, asking questions, eliciting testimony, or otherwise suggesting at trial that any of the services identified in Plaintiff's registration need a universally accepted or industry accepted definition." Plaintiff's MIL's at 15–

16. Defendants counter that they have not argued that the jury may only rely on "universally accepted" definitions and that "both sides are entitled to put up witnesses and evidence to explain the nature and definitional scope of those terms." Defendants' Opp'n at 14. As discussed on the record at the pretrial conference, Plaintiff's MIL No. 4 is **GRANTED IN PART** with respect to arguments or evidence that the jury may only rely on "universally accepted" definitions and **DENIED IN PART** with respect to arguments or evidence that an "industry accepted" definition is required. The parties may submit evidence to the jury to establish "industry accepted" definitions.

**(5) Plaintiff's Motion in Limine No. 5 to Exclude Reference to the so-called "Related Goods Doctrine"**

Plaintiff moves to "preclud[e] Defendants from advancing any arguments under the so-called 'related goods doctrine,' or otherwise making reference to such a doctrine, or treating 'related goods' or 'related services' as a standalone test of any kind." Plaintiff's MIL's at 16. In support, Plaintiff argues "[t]here is no 'related goods doctrine' or 'related services doctrine' under Ninth Circuit precedent," but instead that "[t]he relatedness of the goods is one of many factors used to determine 'likelihood of confusion.'" *Id.* Defendants argue that to the contrary, under Ninth Circuit law, "Defendants are entitled to argue that they own senior common law rights to the name and trademark NEWMARK based not only on their prior, continuous use of NEWMARK for commercial real estate financial services, but also on their prior, continuous use of NEWMARK for 'related services,' namely real estate sales brokerage, leasing brokerage, property management, and facilities management." *See* Defendants' Opp'n at 16–17. Defendants contend that a common law "senior" user of a trademark is entitled to enjoin a "junior" user "from using confusingly similar marks in the same industry and market or **within the senior user's natural zone of expansion** . . . [or] **on related products or services**." *Id.* at 17–18 (internal quotations and citations omitted) (emphasis added and removed).

However, at the pretrial conference, Plaintiff presented a more nuanced argument than it provided in its moving papers. At the pretrial conference, citing to 15 U.S.C. § 1065 and 15 U.S.C. § 1115(b)(5), Plaintiff argued that a purported "senior" user must show "actual prior use" in a given geographical area to establish priority, and that therefore, Defendants may use neither

4

the "natural zone of expansion" nor "related goods" doctrines to establish rights for "Newmark" for services Defendants did not provide before Plaintiff in given geographical market areas that Defendants were not in. In response, Defendants argued at the hearing that their common law rights extend not only to services actually offered by Defendants prior to Plaintiff's registration, but also to related services or services within the natural zone of expansion.

As discussed on the record at the pretrial conference, the Court finds the issue of whether Defendants may use the "related goods" and "natural zone of expansion" doctrines to establish common law rights for "Newmark" for services Defendants did not provide before Plaintiff provided those services was not addressed in Plaintiff's MIL No. 5 and is more properly considered at the jury instruction conference. Accordingly, Plaintiff's MIL No. 5 is **DEFERRED**.

## **DEFENDANTS' MOTIONS IN LIMINE**

**(1) Defendants' Motion in Limine No. 1 to Exclude All References to Jane Doe and Other Lawsuits (ECF 640)**

Defendants move to exclude "sexual harassment and other lawsuits involving Defendants" under FRE 401, 402, 403, and/or 404. *See* Defendants' MIL No. 1 at 1, ECF 640. Plaintiff counters that "[t]hese [] lawsuits are admissible as highly relevant to the issues of confusion and harm." Plaintiff's Opp'n to MIL No. 1 at 1, ECF 664. The Court finds that Plaintiff has clearly demonstrated that evidence of sexual harassment and other lawsuits involving Newmark & Co. are relevant and significantly probative of actual confusion and injury to reputation and goodwill. The Court also recognizes that discussion of sexual harassment suits can stir the passions of the jury. However, such prejudice can be sufficiently reduced by a special jury instruction informing the jury that the allegations have not been proven and limiting the use of such evidence to relevant issues. For example, Plaintiff may not introduce pleadings from the actions or have the pleadings read at trial but may introduce articles available to the public that reference the pleadings. Thus, on balance, the Court finds this evidence relevant and that the prejudicial effect is outweighed by the significant probative value. Accordingly, Defendants' MIL No. 1 is **DENIED**.

//
//

**(2) Defendants' Motion in Limine No. 2 to Exclude Evidence Pertaining to the Parties' Settlement Negotiations (ECF 641)**

Defendants move to "prevent[] Plaintiff from introducing [to] the jury any evidence, testimony, or argument [] regarding settlement correspondence and negotiations between the parties." *See* Defendants' MIL No. 2 at 1, ECF 641. Plaintiff argues that "Defendants improperly seek to categorically exclude [] evidence plainly admissible under [FRE] 408." *See* Plaintiff's Opp'n to MIL No. 2 at 1, ECF 663.

Specifically, this MIL seeks to exclude 13 documents (Exhibits 1–13 ) and conversations/testimony referring to those documents. *See* Levine Decl. ¶¶ 2–8, ECF 641-1. The Court's rulings on the documents encompasses conversations/testimony pertaining to the documents. The Court applies a two-step process under FRE 408: (1) determine whether the document falls within the scope of FRE 408; and if so (2) determine whether an exception applies under FRE 408(b). Exceptions under FRE 408(b) include the purposes of "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FRE 408(b); *see also Freidus v. First Nat'l Bank*, 928 F.2d 793, 803 (8th Cir. 1991) (no error in admitting letters exchanged between parties during settlement negotiations to negate contention of undue delay).

For the reasons stated on the record at the pretrial conference and upon application of FRE 408, Defendants' MIL No. 2 is **GRANTED IN PART** and **DENIED IN PART**. The Court's rulings on the 13 documents under FRE 408 are set forth below.

Exhibits 1–5: Motion to exclude DENIED. The Court finds these documents are not settlement discussions as contemplated by FRE 408.

Exhibit 6: Motion to exclude DENIED with respect to page one of this document, the first two lines of page two, and the signature line for the limited purpose of "negating a contention of undue delay," *see* FRE 408(b). Motion to exclude GRANTED with respect to the remainder of this document.

Exhibits 7–10: Motion to exclude GRANTED; however, witness testimony that settlement offers/negotiations took place is not excluded by this order. No other witness testimony with respect to these documents is permitted.

Exhibit 11: Motion to exclude DENIED. The Court finds this document is a cease and desist letter and thus not a settlement discussion as contemplated by FRE 408.

Exhibits 12–13: Motion to exclude GRANTED. The Court finds these documents are settlement discussions as contemplated by FRE 408 and do not fall within an exception.

### (3) Defendants' Motion in Limine No. 3 to Preclude Evidence, Testimony, and Argument Relating to Plaintiff's Claimed "Actual Damages" (ECF 642)

Defendants move to "preclud[e] Plaintiff [] from introducing evidence, testimony, or argument [] relating to Plaintiff's claimed 'actual damages' in the form of so-called 'corrective advertising' and 'lost business opportunities.'" Defendants' Notice of MIL No. 3 at 1, ECF 649-2. Plaintiff opposes in full and argues that the evidence "is highly probative" and "provides a reasonable basis for the jury to measure damages." *See* Plaintiff's Opp'n to MIL No. 3 at 1, ECF 670. "[B]ecause proof of actual damages often is difficult, a plaintiff may seek compensation based on other measures, such as the cost of advertising needed to correct public confusion caused by infringement." *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011). While a plaintiff may recover "expenses incurred in correcting, preventing, or mitigating consumer confusion," *see Illusions Int'l Inc. v. Walgreen Co.*, 2008 WL 11342979, at *2 (C.D. Cal. July 11, 2008) (internal citation omitted), a plaintiff may not recover for simply "managing the litigation" (for example, responding to interrogatories), as acknowledged by Plaintiff at the pretrial conference. Indeed, Plaintiff must provide "a non-speculative basis for compensatory corrective damages." *Quia*, 2011 WL 2749576, at *6.

Defendants argue that "[Plaintiff] intends to ask the jury to award it 33% of Mr. Heagerty's salary for time spent 'attempting to address marketplace confusion' and 'managing the litigation'" and that Plaintiff has not disclosed the breakdown between the two activities in violation of Rule 26. *See* Defendants' MIL No. 3 at 5, ECF 649-2. Plaintiff responds that "[*p*]*rior* to Heagerty's June 21, 2018 deposition, Plaintiff disclosed its claim for actual damages includes: employee time spent, and to be spent, responding to actual confusion." Plaintiff's Opp'n to MIL No. 3 at 5 (internal quotation and citation omitted) (emphasis in original). However, as discussed on the record at the pretrial conference, the Court is concerned that Plaintiff has not adequately disclosed

1  a breakdown of Mr. Heagerty's time claimed for corrective advertising or what activities

2  comprised "managing the litigation" and shall permit an additional two-hour deposition of Mr.

3  Heagerty at Plaintiff's expense of the actual cost of the deposition only.

   Overall, the jury is free to believe or disbelieve Plaintiff's evidence of actual injury to
reputation and goodwill, i.e. actual damages. Moreover, Defendants may object to evidence as it
is offered. Accordingly, and for the reasons stated on the record at the pretrial conference,
Defendants' MIL No. 3 is **DENIED**.

**(4) Defendants' Motion in Limine No. 4 to Preclude Evidence and Testimony Relating to Defendants' USPTO Filings (ECF 643)**

Defendants move to preclude evidence and testimony relating to Defendants' USPTO filings. *See* Defendants' MIL No. 4, ECF 643. Specifically, Defendants argue that Defendants' USPTO filings "lack probative value and can only confuse the jury," and that if presented to the jury, "the jury should be instructed that [Plaintiff] was not aware of and did not rely on the PTO responses." *Id.* at 3–4. Defendants also argue that if Plaintiff is allowed to introduce testimony that it was aware of the PTO responses, the Court should find privilege waived and order Plaintiff to disclose with whom Mr. Heagerty discussed the PTO responses. *Id.* at 5. Plaintiff argues the PTO filing are "black-and-white statements" the jury would understand and "highly probative to show that Defendants did not use NEWMARK before Plaintiff for mortgage services." Plaintiff's Opp'n to MIL No. 4 at 2–3, ECF 665. Plaintiff also argues that "[w]hether Plaintiff was aware of [the] Reponses is irrelevant to the key issue" and that "Defendants' demand for a forced waiver of privilege is out of bounds." *Id.* at 2–3.

As discussed on the record at the pretrial conference, the Court finds the PTO responses may be submitted as Defendants' admissions regarding services they offered and when Defendants offered those services. Moreover, the Court finds that under FRE 403, the probative value of the PTO responses is not substantially outweighed by danger of confusing or misleading the jury. The jury is capable of assessing the PTO responses and giving them the weight they deserve. In addition, the Court denies Defendants' request that the jury be instructed that Plaintiff was not aware of the PTO actions/responses. However, if Plaintiff offers evidence that it did know of the

8

PTO actions/responses, such evidence will be excluded to the extent it is based on evidence previously withheld under the attorney-client privilege or is sourced to attorney-client communication not previously disclosed, *see Spin Master, Ltd. V. Zobmondo Ent., LLC*, 2012 WL 8134011, at *4 (C.D. Cal. Mar. 9, 2012). Accordingly, Defendants' MIL No. 4 is **DENIED**.

**(5)** **Defendants' Motion in Limine No. 5 to Exclude Late Disclosed Witnesses, Use of De-Designated Expert as Fact Witness; and Late Produced Documents (ECF 644)**

Defendants move to "prevent[] [Plaintiff] from calling witnesses who were not properly disclosed," preclude "testimony from certain witnesses who submitted declarations in support [of Plaintiff's] motions for PI," and "exclud[e] evidence produced well-after the close of fact and deposition discovery." Defendants' MIL No. 5 at 1, ECF 644. Plaintiff opposes. *See* Plaintiff's Opp'n to MIL No. 5, ECF 667. As discussed on the record at the pretrial conference, Defendants' MIL No. 5 is **GRANTED IN PART** and **DENIED IN PART**. The Court's specific rulings are set forth below.

Defendants' motion to exclude Erik Doyle, Josh Weidell, Adam Parker, Wade Nelson, Chris Caras, and Greg Michaud is DENIED. The record indicates that once Weidell and Nelson came to Plaintiff's attention, Plaintiff immediately disclosed Weidell and Nelson to Defendants. *See* Plaintiff's Opp'n at MIL No. 5 at 2 (citing exhibits). However, as discussed at the pretrial conference, the Court shall permit depositions of Weidell and Nelson. The Court additionally finds that Defendants had sufficient notice of Doyle, Parker, and Caras based on references made to them in depositions and/or documents in the record, and Defendants clearly had notice of Michaud based on Michaud's declaration and that Defendants served Michaud with a subpoena. There is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Rule 26, 1993 Adv. Comm. Notes.

Defendants' motion to exclude Terri Slocombe is GRANTED except as to Slocombe's testimony pertaining only to the historical background of Plaintiff's business. Although Slocombe was initially identified as an expert witness and has been withdrawn, Slocombe is also a former employee of Plaintiff and therefore may testify, but only as described above.

9

1    Defendants' motion to exclude Brian Boehmcke is GRANTED. Boehmcke was also identified as an expert witness and the parties stipulated to his withdrawal. The Court finds no "exceptional circumstances" to permit Boehmcke to now testify as a fact witness, *see* Rule 26(b)(4)(D)(ii), and finds that allowing Plaintiff to call him as a witness would be counter to the stipulation the parties reached to withdraw experts.

Defendants' motion to preclude testimony of third-party PI declarants is DENIED. Defendants were on notice and had the opportunity to depose these declarants and/or did depose these declarants.

Defendants' motion to exclude late produced documents is DENIED.

**(6)** **Defendants' Motion in Limine No. 6 to Prevent Any Reference to the Court's Preliminary Injunction Orders (ECF 645)**

Defendants move to preclude evidence from reaching the jury "that this Court issued a preliminary injunction against Defendants." Defendants' MIL No. 6 at 1, ECF 645. Plaintiff argues that this evidence is relevant, and that "prejudice can be curtailed with a jury instruction that the preliminary injunction is not binding." Plaintiff's Opp'n to MIL No. 6 at 1, ECF 668. As discussed on the record at the pretrial conference, the Court finds that existence of the preliminary injunction order may be probative of willfulness, but that any probative value is outweighed by serious and substantial risk of unfair prejudice if presented to the jury. The Court concludes that the jury is likely to determine that the judge has already decided the factual issues and thus the jury need not re-weigh the evidence. Given the complexity of the issues and the unavoidable deference a jury is likely to give the judge's written order, the Court concludes that a limiting instruction would not sufficiently reduce the prejudicial effect of the evidence. Further, the probative value is not significant enough to outweigh the prejudice. *See* FRE 403. Such concerns would not be present at a bench trial, the Court having written the preliminary injunction order. Accordingly, Defendants' MIL No. 6 is **GRANTED** with respect to presentation before the jury and **DENIED** with respect to presentation before the bench.

//

//

## CONCLUSION

For the foregoing reasons and as discussed on the record at the November 29, 2018 pretrial conference, the motions in limine are decided as follows:

Plaintiff's Motion in Limine No. 1:  GRANTED IN PART and DENIED IN PART and DEFERRED IN PART.

Plaintiff's Motion in Limine No. 2:  DENIED.

Plaintiff's Motion in Limine No. 3:  DENIED on the condition that Mr. Shah will not testify before the jury.

Plaintiff's Motion in Limine No. 4:  GRANTED IN PART and DENIED IN PART.

Plaintiff's Motion in Limine No. 5:  DEFERRED to the jury instruction conference.

Defendants' Motion in Limine No. 1:  DENIED subject to the conditions outlined above in the Court's discussion of Defendants' MIL No. 1.

Defendants' Motion in Limine No. 2:  GRANTED IN PART and DENIED IN PART.

Defendants' Motion in Limine No. 3:  DENIED.

Defendants' Motion in Limine No. 4:  DENIED subject to the conditions outlined above in the Court's discussion of Defendants' MIL No. 4.

Defendants' Motion in Limine No. 5:  GRANTED IN PART and DENIED IN PART.

Defendants' Motion in Limine No. 6:  GRANTED with respect to jury trial; DENIED with respect to bench trial.

**IT IS SO ORDERED.**

Dated: December 7, 2018

_____
BETH LABSON FREEMAN
United States District Judge